JOHN DOE, *ex dem.*, AMBROSE K. BLACKWELL; and REUBEN F. DANIEL, plaintiffs in error, vs. RICHARD ROE, casual ejector and NANCY BIRD, tenant in possession, defendant in error.

When the matter in issue is, whether or not the defendant was served, the jury are authorized to infer that he was not, from the fact that no attempt was made to enforce the judgment, for some fifteen or twenty years after it was rendered; and the defendant continuing all that time in the adverse possession of the premises.

Ejectment, from Cherokee county. Tried before Judge HAMMOND, at September Term, 1858.

This was an action of ejectment by plaintiff in error, against the defendant in error, for the recovery of lot of land No. 114, in the fourteenth district, and second section of Cherokee county, containing one hundred and sixty acres.

The facts of this case, and the questions considered and decided, will fully appear from the following bill of exceptions, and the opinion pronounced by the Supreme Court:

GEORGIA, CHEROKEE COUNTY.

Be it remembered, that on the ninth day of September, 1858, during the regular Term of the Superior Court of said county, his Honor Dennis F. Hammond, one of the Judges of the Superior Courts of said State, presiding, the cause of John Doe, on the several demises of Ambrose K. Blackwell, and Reuben F. Daniel, plaintiff, vs. Richard Roe, casual ejector, and Nancy Bird, tenant in possession, defendants, then and there pending on the appeal, on the law side of said Court, being an action of ejectment, came on to be heard, and the parties having announced themselves ready, and a jury being regularly impannelled to try said cause, plaintiff offered in evidence the following testimony, to-wit:

An original grant from the State of Georgia, to Ambrose K. Blackwell, one of the lessors of the plaintiff, for the pre-

mises in dispute, dated 6th January, 1853, copy of which is as follows :

"STATE OF GEORGIA.

By His Excellency, Howell Cobb, Governor and commander-in-chief of the army and navy of this State, and of the militia thereof:

To all to whom these presents shall come, greeting :

Know ye, that in pursuance of an Act of the General Assembly, approved January 22d, 1852, to limit the time for taking out grants to the State's half and informer's half of any lot of land fraudulently drawn, in any of the land and gold lotteries of this State, and to provide for the granting of the same after the expiration of said time, I have given and granted, and by these presents, in the name and behalf of this State, do give and grant unto Ambrose K. Blackwell, of the county of Cherokee, his heirs and assigns forever, all that tract or parcel of land containing one hundred and sixty (160) acres, situate lying and being in the fourteenth district of second section Cherokee county, in the said State, it being the State's and informer's half of lot number one hundred and fourteen (114) of said district, section and county, having such shape, form and marks as appear by a plat of the same hereunto annexed; to have and to hold the said tract or parcel of land, together with all and singular the rights, members and appurtenances thereof, whatsoever, unto the said Ambrose K. Blackwell, his heirs and assigns to his and their own proper use, benefit and behoof, forever in fee simple.

Given under my hand, and the great seal of the State, this thirteenth day of January, in the year of our Lord one thousand eight hundred and fifty-three, and of the independence of the United States of America the seventy-seventh.                     HOWELL COBB, [SEAL].

Signed by His Excellency, the Governor, this 13th day of January, 1853.

W. W. PAINE, *Secretary Executive Department.*"

Which original grant, with the plat annexed thereto, was read in evidence without objection.

Plaintiff also proved by Hammett, that Nancy Bird was in possession of the premises in dispute, at the time suit was commenced, and at the time the process was served on her in said case, and that the lot of land sued for, was situate in said county of Cherokee.

Plaintiff also offered in evidence, the following testimony, to-wit: An acknowledgment on the writ in said case in the following words and figures, to-wit: " I acknowledge due and legal service of this declaration, waiving a copy and service by the Sheriff, also waiving copy process, and admit and acknowledge possession of premises and land sued for in this declaration, this 13th of July, 1853; that is, that Nancy Bird was, and is in possession of the land only.

D. H. BIRD, *attorney for*
NANCY BIRD."

Which acknowledgment and admission was read in evidence without objection.

The plaintiff then rested his case.

The defendant, Nancy Bird, then offered in evidence, the following testimony, to-wit: An original grant from the State of Georgia to Nancy Holland, widow, for the premises in dispute, dated twenty-fifth day of February, 1834.

A deed from Nancy Holland to John Wagoner, for the premises in dispute, dated the twenty-fourth day of December, 1835, with proof of its due execution.

A deed duly executed and registered, from John J. Cook, Andrew Wagnon, John Wagnon, Jr., Peter Wagnon, and John Wagnon, Sr., to John G. Bird, for the premises in dispute, dated fourth day of July, 1845; deed duly executed and registered, from John Wagnon, Sr., to Andrew Wagnon, for " all that tract of land situate lying and being the south of lot" of land the premises in dispute, " marked by a conditional line from east to west, through said lot," dated 6th December, 1843.

A deed duly executed and recorded from John Wagnon, Sr., to John J. Cook, Jr., for that portion of the premises in dispute, " being the north side of said lot, marked by a conditional line "from east to west, through said lot;" said deed dated the sixth day of December, 1843.

All of which deeds and grant were read in evidence without objection; said defendant having proven by said Hammett, the witness aforesaid, that Nancy Bird, the tenant, "was the wife, and now widow, of John G. Bird, and remained in possession of said lot of land, as such, after the death of the said John G. Bird. Said Nancy Bird also proved by one Elijah Hillhouse, a witness, that John Wagoner and John Wagnon, mentioned in said deeds were one and the same person.

The defendant then rested her case.

Plaintiff then offered in evidence, the following testimony, from the minutes of the Superior Court of September Term, 1836, to-wit:

" The Governor, on the information of ⎱ *Scire facias* on lot
JOHN WAGGONER vs. NANCY HOLLAND. ⎰ No. 114, 14th district, 2d section.

" We the jury" (here follow the names,) " find the return fraudulent, 12th September, 1836.

GEORGE M. TAYLOR, *Foreman.*"

Which was read from the minutes without objection.

Plaintiff also offered in evidence, the affidavit and bond of the informer, and the *scire facias* issued thereon, to condemn, as fraudulent, the return and draw of said lot, by said Nancy Holland.

The following entries were on the back of the *scire facias* and bond, which plaintiff offered in evidence, to-wit:

"OFFICE OF THE CLERK OF THE SUPERIOR COURT, ⎱
of Cherokee County Georgia. ⎰

I, William Grisham, Clerk of the Superior Court, of the county aforesaid, do hereby certify, that John Waggoner, the informant, has made and deposited in this office, an oath

in writing, that in making this information he has no combination or understanding directly or indirectly, with the drawer or any other person as the friend of, or on the part of the drawer, and it also duly appears that he has given bond and security in the sum of two hundred dollars, to the Justices of the Inferior Court of this county, conditioned to indemnify the individual drawer of the within mentioned tract of land, and for all damages she may sustain, provided the said land is not condemned as fraudulent.   The said affidavit and foregoing *scire facias* filed in this office the 27th day of January, 1835.

WILLIAM GRISHAM, *Clerk.*

We the jury find the return fraudulent, this 12th September, 1836.

, GEORGE M. TAYLOR, *Foreman.*"

" *Substituted in lieu of the original, lost after being served.*"

"Whereupon, it is considered by the Court, that the return be fraudulent, the draw of said lot be void, and that the grant issued upon said return be set aside, and that the informer recover of the defendant the sum of      dollars and cents for his costs in this suit laid out and expended, and the defendant in mercy, &c.   This 14th September, 1836.

WILLIAM DANIEL, *Plaintiff's Att'y.*"

To which affidavit, bond and *scire facias*, with the said entries thereon being admitted in evidence, counsel for the defendant objected, on the ground that said *scire facias* was not an original, but a copy *scire facias*, and that it did not appear that there was any order of the Court establishing said copy *scire facias*, in lieu of the lost original, and because it did not appear that the defendant had ever been served with said *scire facias*.   The Court sustained the objection, and ruled out the testimony, and counsel for plaintiff excepted.

The plaintiff then proposed to read in evidence, the record

of said bond, affidavit and *scire facias*, and the said entries thereon, to which defendant's counsel objected on the same grounds as above.   The Court sustained the objection, and ruled out the testimony, and plaintiff's counsel excepted.

The plaintiff then proposed to prove by William Grisham, that he was Clerk of the Superior Court of Cherokee county, at the time that said *scire facias* was tried, and that the entry on said copy *scire facias* of "*substituted in lieu of the original, lost after being served,*" was made in the presence of, and by the consent of the Court, and was considered the order of the Court, and that the case proceeded to trial regularly, though he could not recollect, at this late day, all that was done, nor could he recollect any special decision of the Judge establishing said copy *scire facias*, but that the entry aforesaid, was regarded as having the sanction and approval of the Court, and that the practice in that day was very loose.

To this testimony, defendant's counsel objected, on the ground, that the action and order of the Court could not be proven in that way, but that the minutes must show what the Court did.   The Court sustained the objection, and ruled out the testimony, and counsel for plaintiff excepted. The plaintiff then proposed to prove the facts aforesaid by the Clerk, and also to prove by the answers of Robert Mitchell, to interrogatories taken in the cause that he had seen "the original of the said copy *scire facias* several times, and examined it carefully and particularly in the year 1835, and perhaps in the year 1836 also, and that his best recollection is, that he left said original *scire facias* in his office at Gainesville, which office was burned up with said original *scire facias*, if left there, and that said original *scire facias* was served on Nancy Holland, or at least had an entry of service on the same, made either by Abraham Chastain, or Jacob Ebberhart, one of whom was Sheriff and the other Deputy Sheriff of Hall county at the time.   His best recollection is, that the entry of service was signed by

Ebberhart, and that his means of knowing the facts are derived from having been at one time interested in the case, of but now has no interest in it." And upon the basis this testimony the plaintiff moved to enter the order establishing said copy *scire facias* on the minutes *nunc pro tunc,* which motion was overruled by the Court, and the testimony repelled, and counsel for plaintiff excepted.

The plaintiff then offered in evidence, an Act of the General Assembly of the State of Georgia, assented to the 31st of December, 1838, the first section of which is as follows, to-wit:

"Be it enacted, by the General Assembly, and House of Representatives, of the State of Georgia, in General Assembly met, and it is hereby enacted by the authority of the same, That the Sheriff of Cherokee county be required to give notice in one of the public Gazettes of this State thirty days, that he will sell at public outcry, on a given day, before the Court-house door, in the town of Canton, Cherokee county, lot of land number one hundred and twenty-two, in the 14th district of the second section, which was drawn by W. A. Crumbie, and relinquished by him to the State, and also the State's interest in lot number one hundred and fourteen, in the fourteenth district of the second section, *which was drawn by one Nancy Holland, and which has been condemned as a fradulent draw,* and when so sold by said Sheriff he shall pay the proceeds arising from the sale of said land after deducting two per cent. for selling, and the advertisement, to the Treasurer of said county of Cherokee, and it shall become a part of the county fund," which Act was read in evidence, without objection.

The cause being closed, counsel for the plaintiff requested the Court to charge the jury, that after the expiration of twenty years from its date, the judgment of a Court of competent jurisdiction is conclusively presumed to have been properly rendered, and upon the evidence required by law, although the record did not show every progressive

step and requisite of the judgment, and that in this case, if the minutes of the Court showed a verdict condemning the land in dispute as having been fraudulently drawn by Nancy Holland, the jury might presume that that verdict, especially after the lapse of twenty years, was rendered upon proper and sufficient notice to the defendant, and upon proper pleadings, and upon competent and sufficient evidence. The Court refused to charge, as requested, but on the contrary charged the jury, that the record must affirmatively show that Nancy Holland was served with the *scire facias* before they could find her draw of the land a fraudulent draw; to which charge and refusal to charge, plaintiff's counsel excepted.

Counsel for the plaintiff also requested the Court to charge the jury, that an Act of the Legislature constitutionally passed and approved, was *prima facie* evidence of the facts recited in it, and that if the Act of the Legislature read in evidence in this case, recited as a fact that the land in dispute was drawn by Nancy Holland, and afterwards was condemned as a fraudulent draw, in the absence of all opposing proof to the contrary, such recitation was evidence of the fact recited. The Court refused to charge, as requested, but charged the jury, that the recitations of fact in said statute, were not sufficient to authorize the jury to determine the draw of Nancy Holland a fraudulent draw, even in the absence of all proof to the contrary. To which charge, and refusal to charge, counsel for plaintiff excepted.

The jury returned a verdict for the defendant, whereupon counsel for plaintiff, on this the 6th day of October, in the year aforesaid, being within thirty days from the adjournment of the said Court in which said cause was tried, tenders his bill of exceptions, and says:

1st. That the Court erred in rejecting and ruling out the original affidavit, bond and *scire facias*, with the entries thereon.

2d. That the Court erred in rejecting and ruling out as

evidence, the record of said bond, affidavit and *scire facias*, with the entries thereon.

3d. That the Court erred in rejecting and ruling out the evidence of William Grisham, the Clerk of said Court, at the time said *scire facias* was tried.

4th. That the Court erred in rejecting and ruling out the depositions of Robert Mitchell.

5th. That the Court erred in refusing to allow plaintiff's counsel to enter *nunc pro tunc* on the minutes, the order establishing the copy *scire facias* in lieu of the lost original in said case.

6th. That the Court erred in refusing to charge the jury, as requested, respecting the legal presumptions in favor of judgments after the lapse of twenty years.

7th. That the Court erred in charging the jury, that the record must show affirmatively that Nancy Holland was served with a copy of the original *scire facias*, before they could find her draw of the land a fraudulent draw.

8th. That the Court erred in refusing to charge the jury, as requested, respecting the Acts of the Legislature, and the recitations therein, when constitutionally passed.

9th. That the Court erred in charging the jury, that the recitation of facts in the Act of 1838, which had been read in evidence on the trial of said case, was not sufficient to authorize the jury to determine the draw of Nancy Holland a fraudulent draw, even in the absence of all proof to the contrary.

10th. That the Court erred in the whole proceedings. And as the facts aforesaid do not appear of record, the plaintiff by his counsel, prays that this, his bill of exceptions, may be signed and certified as required by the statute in such case made and provided.

Irwin & Lester; and Brown, for plaintiff in error.

Hansell; and Milner, *contra*.

*By the Court.*—LUMPKIN J. delivering the opinion.

The whole of the testimony offered by the plaintiff in rebuttal, and rejected by the Court, should have been admitted. The recitals in the Act of the Legislature, are certainly entitled to some consideration; still, the testimony of Robert Mitchell, is the only direct proof to the fact of the service of the *scire facias*, all else is but inference and presumption; and Mr. Mitchell, after such a lapse of time, deposes more perhaps, from his knowledge as an attorney, as to what ought to have been done, than any distinct recollection, as to what was actually done.

On the other hand, Nancy Bird, and those under whom she claims, and who derive title from the drawer of the land, have never been out of possession; that possession, notwithstanding the verdict of the jury in 1836, declaring the draw fraudulent, and the Act of the General Assembly in 1838, ordering a sale of the land, was never disturbed until 1853; in other words, no attempt was made to execute the judgment of the Court, until sixteen years after it was rendered; and during all this time the occupation of the land, by the adverse claimant, was acquiesced in.

In weighing, then, the testimony in favor of the plaintiff, which was offered to perfect this record, the jury are at liberty to look to the length of the defendant's possession, since the proceedings were had under the *scire facias*; and the failure to enforce the judgment, as circumstances from which they have a right to infer, that Nancy Holland never was served with the *scire facias*, and without service, the judgment of condemnation is a nullity.

The *nunc pro tunc* order, substituting the copy *scire facias* for the original, would not strengthen the plaintiff's case, because there is no entry of service upon it by the Sheriff. The copy from the record is sufficient for all that it proves; under the *nunc pro tunc* order it could establish nothing more.

As it respects the requests to charge, and the charges as given, we would say: that while the jury might infer from the verdict, that the pleadings were regular, it is not conclusive by any means, of the fact, even after the lapse of twenty years.   Still we are not prepared to sustain the Court in ruling that service could be proven only by record evidence.

Finally, we concur with the Court, that the recitals in the Act of 1838, were not conclusive, unless rebutted, that Nancy Holland was served; and for the very obvious reason that the fact that she was served, the very thing in dispute is not recited or assumed to be true in the Act.   Nevertheless, we repeat, the Act is worth something, because it is based upon the general assumption, that the lot of land was regularly and legally condemned as having been fraudulently drawn.

Judgment reversed.